IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Nos. 20 C 6847 |
| ) | and   20 C 6977 |
| BMW TECH. CORP., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Brenda Lopez has sued BMW Technology Corp., other related BMW entities, Creative Circle, LLC, and Florian Reuter.  Creative Circle is an employment agency that places workers on temporary assignments.  In December 2017, Creative Circle placed Lopez at BMW as "principal content operations manager" in one of its departments. Beginning in 2019, Lopez alleges, she was subjected to differential terms and conditions of employment and was verbally harassed by a male supervisor, reported this, and was removed from his supervision without the supervisor being disciplined.

Lopez alleges that in February 2020, at a company outing held at a bowling alley, Reuter, a BMW executive, without provocation reached across a table, grabbed her, pushed her against a wall, cursed at her and threatened her with loss of her job. Eventually Reuter let Lopez go.  She left the event, went to a hospital for treatment of injuries, and reported Reuter's assault to the police.  When Lopez reported to work the following Monday, afraid of seeing Reuter, she asked to go to Creative Circle's office

and then reported the incident to Creative Circle human resources personnel and to BMW. She alleges that nothing was done to discipline Reuter.

At a later meeting involving Lopez and both Creative Circle and BMW human resources personnel, Lopez described the incident with Reuter as well as what the complaint describes as other instances of gender-related misconduct at BMW's offices. Lopez was given about three weeks of paid leave.

In mid-March, Lopez learned from a colleague that BMW had made an announcement to the effect that she would no longer be working there. Creative Circle did not provide her with an alternative job placement and therefore (Lopez alleges) effectively terminated her as well. She alleges that the terminations were in retaliation for her reporting of misconduct at BMW and for other legally prohibited reasons, not applied to similarly situated male workers.

Lopez's initial complaint in this case named as defendants only BMW Technology Corp., Creative Circle, LLC, and Reuter. Shortly after she filed the case, she filed a motion to amend, seeking to include other BMW entities, to ensure that she had sued the proper parties. Out of concern that the statute of limitations might run against those parties while awaiting ruling on the motion to amend, Lopez filed a separate lawsuit, Case No. 20 C 6977, naming all of the defendants and including all of her claims against them. The Court granted the motion to amend in Case No. 20 C 6847 and also found Case No. 20 C 6977 related to the earlier-filed case. It is likely, at this point, that Case No. 20 C 6977 may be dismissed as duplicative of the earlier case.

Lopez asserts claims against the BMW entities and Creative Circle under Title VII of the Civil Rights Act of 1964 for retaliation and discrimination/hostile work environment

(counts 1 and 2); under Illinois common law against those same defendants for retaliatory discharge (count 3); and under Illinois common law against Reuter for assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress (counts 4, 5, and 6). On the same day she filed suit, Lopez also serve a demand for arbitration on BMW and Creative Circle, seeking arbitration of the same claims pursuant to a "dispute resolution agreement" between her and creative circle. Lopez agreed to stay her claims against BMW and Creative Circle pending arbitration. Reuter has moved to compel arbitration of the claims against him or to stay litigation of those claims pending the Lopez-BMW/Creative Circle arbitration, a motion that Lopez opposes and that is the subject of this opinion.

## Discussion

**1.    Motion to compel arbitration**

The relevant language of Lopez's dispute resolution agreement with Creative Circle reads as follows:

> **1. ARBITRATION OF CLAIMS.** This Agreement is between the individual whose signature is below ("Employee") and Creative Circle, LLC, its affiliates, subsidiaries, parent company, and clients with which Employee is assigned or employed (collectively, the "Company"). Employee and Company are the "Parties" to the Agreement. Employee and Company recognize the mutual benefits afforded by being able to resolve disputes by arbitration, which is far more expeditious and less costly than court proceedings. Therefore, the Parties agree, to the fullest extent permitted by applicable law, to arbitrate any dispute arising out of or related to Employee's employment with, or termination of employment, from, Company. This Agreement does not prevent or excuse Employee from following the Company's procedures for making and resolving complaints and this Agreement is not a substitute for following those procedures. This Agreement is intended to apply to resolving disputes that otherwise would be resolved in a court of law, and therefore, unless otherwise prohibited by law, this Agreement requires that all disputes must be resolved only by an arbitrator through final and binding arbitration and not by a court or jury trial.

3

> **a. Employment Claims.** This includes disputes arising out of or relating to interpreting this Agreement, but does not include e disputes relating to the validity of this Agreement or enforcing this Agreement or any portion of this Agreement. This Agreement also applies, without limitation, to disputes regarding the employment relationship, any city, county, state or federal wage-hour law compensation, breaks and rest periods, training, termination, or harassment, and claims arising under laws protecting trade secrets, the Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, Title VII of the Civil Rights Act of 1964, and state statutes addressing the same or similar matters, including the California Fair Employment and Housing Act, the California Family Rights Act, the California Labor Code and all other similar federal and state statutory and common law claims (excluding workers compensation, state disability insurance and employment insurance claims).

. . .

Def.'s Opening Mem., Ex. 1, sub-Ex. B at 1.

In his motion, Reuter contends that: Lopez signed a valid and binding agreement to arbitrate all claims arising from her employment, *see* Def.'s Opening Mem. at 6-7; the question of whether her tort claims against him are within the scope of the arbitration agreement are a matter conferred on the arbitrator, not the Court, *see id.* at 7-8; and that he is a third-party beneficiary of the agreement that Lopez entered into with Creative Circle, *see id.* at 8-10). Reuter argues that even if arbitration is not compelled, the Court should stay litigation of the claims against him given the interrelationship between those claims and Lopez's claims against BMW that are proceeding in arbitration. *See id.* at 10-13.

Lopez's primary argument in opposition to Reuter's motion is that he is neither a party to nor a third-party beneficiary of the arbitration agreement, and thus he is not

4

entitled to invoke the agreement's terms. Lopez also opposes a stay in the event the Court denies to compel arbitration, arguing that this would unfairly prejudice her.

It is undisputed that Reuter is not a party to Lopez's agreement with Creative Circle. A litigant who is not a party to the relevant arbitration agreement may invoke the Federal Arbitration Act and compel arbitration of a dispute only if the relevant state's contract law allows the litigant to enforce the agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). In *Arthur Andersen LLP*, the Court identified assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary, waiver, and estoppel as among the state-law principles that can govern who may enforce an arbitration agreement. *See id.* at 631; *see also Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2018).

In this case, the parties agree that Illinois law applies. *See* Pl.'s Resp. Mem. at 4; Def.'s Opening Mem. at 8-9; Def.'s Reply Mem. at 3-5. They also appear to agree that contract-law principles relevant to Reuter's motion involve the law of third-party beneficiaries; Reuter does not argue any other basis upon which he might enforce the Lopez-Creative Circle agreement.

The key question presented by Reuter's motion is whether he is an intended beneficiary of Lopez's agreement with Creative Circle or rather is an incidental beneficiary:

> Illinois recognizes two types of third-party beneficiaries, intended and incidental. An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them.

*Cont. Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005) (quoting *Estate*

5

of *Willis v. Kiferbaum Constr. Corp.*, 357 Ill. App. 3d 1002, 1007, 830 N.E.2d 636, 643 (2005)). An individual who is not a party to the contract is an intended beneficiary and may enforce the contract only "when [the] contract's original parties intentionally enter into the contract for the direct benefit of the individual." *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 973, 700 N.E.2d 181, 185 (1998) (cited in *Cont. Cas. Co.*, 417 F.3d at 734); *see also Cahill v. E. Benefit Sys.*, 236 Ill. App. 3d 517, 520, 603 N.E.2d 788, 791 (1992). "'The promisor's intention must be shown by an express provision in the contract identifying the third-party beneficiary." *Swavely*, 298 Ill. App. 3d at 973, 700 N.E.2d at 185 (quoting *Cahill*, 236 Ill. App. 3d at 520, 603 N.E.2d at 791). The beneficiary need not be identified by name, "but it must be identified in some manner, for example, by describing the class to which it belongs." *Cont. Cas. Co.*, 417 F.3d at 734 (citing *Holmes v. Fed. Ins. Co.*, 353 Ill. App. 3d 1062, 1066, 820 N.E.2d 526, 530 (2004)). "Illinois law holds a strong presumption against creating contractual rights in third parties, and this presumption can only be overcome by a showing that the language and circumstances of the contract manifest an affirmative intent by the parties to benefit the third party." *Estate of Willis*, 357 Ill. App. 3d at 1007, 830 N.E.2d at 642.

Reuter has not shown that he is an intended beneficiary of the Lopez-Creative Circle contract. He relies on the contractual language stating that the agreement "is between the individual whose signature is below ('Employee') and Creative Circle, LLC, its affiliates, subsidiaries, parent company, and clients with which Employee is assigned or employed (collectively, the 'Company')." Specifically, Reuter contends that as a BMW executive, he was in effect a "client" within the meaning of this contractual language. But the simple fact is that Reuter was not Creative Circle's client; BMW was.

6

It would have been relatively easy to include language in the contract extending its benefits to employees or agents of clients, but there is no such language. Reuter's contention would require adding terms to the contract, which is not how contracts are appropriately read.

The Court concludes that Reuter is no more than an *incidental* beneficiary of the Lopez-Creative Circle agreement, and as such he "has no rights [under the contract] and may not sue to enforce them." *Carlson v. Rehab. Inst. of Chi.*, 2016 IL App (1st) 143853, ¶ 14, 50 N.E.3d 1250, 1256; see also *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 2017 IL App (1st) 160756, ¶¶53-54, 83 N.E.2d 1027, 1042.

For these reasons, the Court denies Reuter's motion to compel arbitration of Lopez's claims against him and thus need not address Lopez's remaining arguments against compelling arbitration.

**2.     Alternative motion to stay**

Reuter argues in the alternative that due to overlap between Lopez's claims against BMW and her claims against him, litigation of her claims against him should be stayed pending the conclusion of the Lopez-BMW arbitration. This question is governed not by the Federal Arbitration Act but rather by "the normal rules for parallel-proceeding abstention." *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). A court considering such a request in this context assesses factors such as the risk of inconsistent rulings, prejudice caused by delay, and the extent to which parties will be bound by the arbitration. *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007).

There is some risk of inconsistent rulings here. Lopez included the incident

involving Reuter at bowling alley in her EEOC charge alleging a hostile work environment. She states in her response to the motion to compel arbitration that she does not intend to include this conduct at the bowling alley as a basis for her claims against BMW, *see* Pl.'s Resp. at 13, but the EEOC charge does suggest some factual overlap.

Lopez contends that she will be prejudiced by delaying litigation of her claim against Reuter, because the limitations on discovery in arbitration will prevent the sort of discovery that she can pursue in court and thus may lead to faded memories or loss of evidence once she is able to pursue the lawsuit. At present, however, the Court has no reason to believe that the arbitration will proceed anything other than expeditiously.

It is relatively unlikely that an adverse ruling in the arbitration of Lopez's claims against BMW would bind her with respect to litigation of her tort claims against Reuter. The bowling alley incident may not even come up; it may not be a necessary aspect of Lopez's claims against BMW; and if it does come up, it is unusual for arbitration rulings to include detailed findings of the type that one ordinarily gets from judges in court proceedings. But there is at least some possibility that the arbitration could result in a ruling that might have a binding effect in the present case.

On balance, though the issue is close, the Court concludes that it is appropriate to stay proceedings in this litigation at least until the Court can see how the arbitration is progressing. The Court therefore grants Reuter's motion for a stay pending further order of Court.

## Conclusion

For the reasons stated above, the Court denies defendant Florian Reuter's

motion to compel arbitration but grants his motion to stay pending further order of Court. The ruling and status hearing set for April 23, 2021 is vacated. The case is set for a telephonic status hearing on June 10, 2021 at 8:50 a.m., using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves. A joint status report regarding the Lopez-BMW arbitration is to be filed on June 3, 2021. In addition, plaintiff is ordered to show cause in writing, by no later than April 27, 2021, why Case No. 20 C 6977 should not be dismissed without prejudice as duplicative of Case No. 20 C 6847.

Date: April 19, 2021

_____
MATTHEW F. KENNELLY
United States District Judge